IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFF HANLON, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>ARAMARK SPORTS, LLC,<br><br>      Defendant. | Civil Action No. 09-465 |

MEMORANDUM AND ORDER

Gary L. Lancaster,
Chief Judge.                                                          February 3, 2010

      This is an action alleging violations of the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681 et seq., ("FACTA"). Plaintiff, Jeff Hanlon, alleges on behalf of himself and all others similar situated that defendant, Aramark Sports, LLC, violated the truncation requirements of FACTA, 15 U.S.C. § 1681(g)(1). Before the court is the parties' joint motion for preliminary approval of class action settlement. [Doc. No. 21].

      For the reasons set forth below, the motion will be granted.

I. Background

      Plaintiff alleges that defendant violated FACTA by unlawfully and knowingly printing more than five digits of the credit and debit card numbers and expiration dates on receipts provided to customers at its point of sale in violation of 15 U.S.C. § 1681(g)(1). The parties have reached a proposed

settlement, and on December 10, 2009, executed a Class Action Settlement Agreement ("Agreement").

The parties have agreed to certification, for settlement purposes only, of a class defined as:

> All persons who received electronically printed receipts from any store at PNC Park in Pittsburgh, Pennsylvania at the point of sale or transaction, in a transaction occurring between March 24, 2009 and April 23, 2009, and wherein the receipt displayed (1) more than the last five digits of the person's credit card or debit card number, and/or (2) the expiration date of the person's credit card number.[1]

For purposes of this settlement only, defendant denies any liability under the statute, but does acknowledge that there were approximately 4,773 transactions where class members' expiration dates and credit card or debit card numbers were printed on the receipts at the point of sale. There is no indication that plaintiff or any member of putative class has suffered any actual monetary injury as a result of defendant's alleged FACTA violation.

The settlement agreement provides that defendant will agree to the court's entry of a consent decree requiring defendant to remain in full compliance with the relevant provisions of FACTA. Defendant will also offer participating class members a Settlement Relief Voucher ("voucher") good for

---

[1] The court assumes the parties meant this final line to include debit cards.

any one of the following: (1) $50 off a purchase of an item with a price of $100 or more; (2) a "classy" tee shirt with a suggested retail value of $20-40; (3) a "hoodie" with a suggested retail value of $50-55 redeemable at any store in PNC Park. Notice will be provided through a one-time publication in the Pittsburgh Post-Gazette. Defendant will also post a sign in a "prominent" location in the Pirates Outfitters store at PNC Park. The sign will notify customers that anyone who shopped at any store in PNC Park from March 24, 2009 to April 23, 2009 "may be entitled to a Settlement Relief Voucher" and directs customers to a website for further information. According to the agreement, this sign will be posted starting on the Notice Publication Deadline, and will remain there for 120 days. Defendant is responsible for paying all costs relating to class notification.

Defendant further agrees that because there were 4,773 transactions, it will disseminate "not only those Settlement Relief Vouchers claimed by Participating Claimants, but a total of . . . 4,773 vouchers." To effectuate this requirement, the agreement outlines that fifteen days after removing the in-store notice, Defendant will provide a voucher to every customer at PNC Park who makes a purchase with a credit card. This will continue until all 4,773 vouchers have been distributed. Finally, the parties have agreed to attorneys' fees of $105,000.

II.  Standard of Review

It is plaintiff's burden to prove that this action satisfies all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 183-84 (3d Cir. 2001). The court of appeals has noted that "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." In re Community Bank, 48 F.3d at 302. In order for a class to be certifiable under Rule 23(a), it must meet four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Id. If the court finds that the proposed class satisfies the four requirements of Rule 23(a), the court must determine whether the class fits within one of the categories set forth in Rule 23(b). Id.

Here, plaintiff seeks certification under Rule 23(b)(3), which provides that certification is proper if the court finds that "questions of law or fact common to the members of the class predominate over any questions affecting individual class members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

In reviewing a submission pursuant to Rules 23(a) and

(b), a court "must set forth persuasive reasons, stated with objectivity, why the submissions of counsel totally reflect the independent judgment of the court." In re Community Bank of Northern Virginia, 418 F.3d 277, 301 (3d Cir. 2005). Although a class certification decision requires a thorough examination of the factual and legal allegations, "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacqueline, 417 U.S. 156, 178 (1974) (citation and quotations omitted).

In the context of settlement-only class certifications, the Supreme Court of the United States has noted that "a district court need not inquire whether the case, if tried, would present intractable management problems. . ." Amchem. Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997). The United States Court of Appeals for the Third Circuit has stressed, however, that "regardless of whether a district court certifies a class for trial or for settlement, it must first find that the case satisfies all the requirements of Rule 23." In re Community Bank, 418 F.3d at 300. The court of appeals directed that "[i]n making this analysis, the district court may take the terms of the proposed settlement into consideration. The central inquiry, however, is adequacy of representation." Id.

III. Discussion

    A. Rule 23(a)

        1. Numerosity

Rule 23(a)(1) permits class action treatment only when "the class is so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1); Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 182 (3d Cir. 2001). Here, the parties agree that approximately 4,773 electronic transactions took place that violated the truncation requirements of FACTA. Therefore, there are potentially a maximum of 4,773 class members. As a result, the court finds that the Agreement satisfies the numerosity requirement of Rule 23(a)(1). See Grant v. Sullivan, 131 F.R.D. 436, 446 (M.D.Pa. 1990) (stating that courts have certified classes with as few as fourteen persons).

        2. Commonality and Typicality

"The concepts of commonality and typicality are broadly defined and tend to merge." In re Community Bank, 418 F.3d at 303. The court of appeals has stated that this requirement will be satisfied "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994). "Because the requirement [of commonality] may be satisfied by a single common issue," the requirement is usually easily met in most cases. Id.

In this case, plaintiff claims that he and the class members received a receipt that unlawfully contained their credit card numbers expiration and date. The court finds this sufficient to establish commonality and typicality.

### 3. Adequacy of representation

Finally, Rule 23(a)(4) requires that plaintiffs must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" Beck v. Maximus, Inc., 457 F.3d 291, 296 (3d Cir. 2006) (quoting Amchem, 521 U.S. at 625). It "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." Id. (quoting Baby Neal, 43 F.3d at 55). Thus, the court needs to determine whether there is a conflict between the representative's interests and those of the class and whether the class attorney is capable of representing the class. Allen v. Holiday Universal, 249 F.R.D. 166, 180 (E.D. Pa. 2008) (citation omitted). The burden is on defendant to prove that the representative will not adequately represent the class. Lewis v. Curtis, 671 F.2d 779, 788-89 (3d Cir. 1982).

Here, as noted, plaintiff's claims are the epitome of those of the class, and there is no apparently conflict of interest. Plaintiff's counsel are well known to the court as experienced and zealous consumer protection advocates. Therefore, the court finds that the adequacy of representation of Rule 23(a)(4) has been met.

B. Rule 23(b)(3)

As stated above, the parties seek certification pursuant to Rule 23(b)(3), which requires the court to examine whether common questions of law or fact predominate and whether "the class action mechanism is the superior method for adjudicating the case." Fed. R. Civ. P. 23(b)(3).

1. Predominance

The predominance inquiry examines "whether the proposed class is sufficiently cohesive to warrant adjudication by representation." In re Community Bank, 418 F.3d at 308-09 (citing Amchem, 521 U.S. 623-24) "A proper predominance inquiry 'trains on the legal or factual questions that qualify each member's case as a genuine controversy, questions that preexist any settlement.'" Id. (quoting Amchem, 521 U.S. at 623). In this vein, "a predominance analysis 'is similar to the requirement of Rule 23(a)(3) that claims or defenses of the named representatives must be typical of the claims of defenses of the class.'" Id. (quoting Amchem, 521 U.S. at 623 n. 18).

8

Here, as discussed in the Rule 23 analysis, all the claims arise from the same factual predicate, i.e. all potential class members suffered from the same alleged injury. As a result, the court finds that the predominance requirement has been satisfied.

2. <u>Superiority</u>

The superiority requirement of Rule 23(b)(3) asks a district court "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." <u>In re Community Bank</u>, 418 at 309 (quoting <u>Georgine v. Amchem Prods.</u>, Inc., 83 F.3d 610, 632 (3d Cir. 1996)). Rule 23(b)(3) instructs that the matters pertinent to this inquiry include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

<u>Id</u>.

The parties note that a number of district courts have used the superiority prong to deny class certification in similar class involving FACTA, citing in particular several cases from the Northern District of California. <u>See</u> <u>e.g.</u>, <u>Najarian v. Charlotte Russe, Inc.</u>, C.A. No. 07-501 (C.D. Cal. June 12, 2007)

9

(Klausner, J.); Soulian v. Int'l Coffee & Tea L.L.C., C.A. No. 07-502 (C.D. Cal. June 12, 2007) (Klausner, J.,). These cases have concluded that FACTA class actions do not satisfy the superiority prong because they would expose defendant to potentially massive statutory damages in violation of the due process clause of the Fifth Amendment to the United States Constitution.

These cases from the United States District Court for the Central District of California are well reasoned and persuasive. They are, however, distinguishable from this case. Here, the parties seek preliminary approval of a negotiated settlement. To that extent, the potential damages are not only ascertainable, they are effectively capped. The theoretical maximum exposure to defendant, to which it has agreed, is the number of potential claimants, 4,773, multiplied by the maximum value of the settlement relief options, $55, for a total exposure of $262,515, which is far from ruinous.

Further, in a case brought pursuant to the Fair Credit Report Act, 15 U.S.C. § 1681 et seq. , to which FACTA is an amendment, the United States Court of Appeals for the Seventh Circuit, noted that "[a]n award that would be unconstitutionally excessive may be reduced ... but constitutional limits are best applied after a class has been certified." Murray v. GMAC Mortgage Corp., 434 F.3d 948, 954 (7th Cir. 2006). The court

observed that "[r]educing recoveries by forcing everyone to litigate independently-so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims-has little to recommend it." Id.

We find no reason why a Rule 23(b)(3) class action is not the superior means to adjudicate this matter. Class members are unlikely to have the financial incentive to litigate their suits individuals because most, if not all, of the class members' claims are modest in light of the costs of litigation. See In re Prudential Ins. Co. of Am. Sales Practices Litig., 962 F. Supp. 450, 522-23 (D.N.J. 1997) ("The class action device may allow plaintiffs to "pool claims which would be uneconomical to litigate individually'"). Furthermore, this action saves time and expense because, assuming each transaction represents one individual, there are potentially nearly 5,000 class members. As a result, the court finds that this class action satisfies the superiority requirement.

C. The Proposed Settlement

Final approval of a class action settlement requires a finding that the settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(1)(c). At this juncture, however, the court must only make "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification,

11

proposed settlement, and date of the final fairness hearing." Manual for Complex Litigation (Fourth), § 21.632 (2004). Accordingly, the only question before the court is whether the settlement "discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." Mehling v. New York Life Ins. Co., 246 F.R.D. 467, 472 (E.D.Pa. 2007) (citations omitted). At this stage, the court "need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute." Id. A common inquiry is whether the proposed settlement is the result of "arms-length negotiations." Id.

Here, the parties submit that this settlement meets the requirements for preliminary approval. The agreement is the product of an arms-length negotiation, and the parties state that "the amounts paid in settlement and the other terms of the settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel." [Doc. No. 21, pg. 13 at # 2.9.5]. The court finds that the settlement merits preliminary approval. The court recognizes that the court of appeals has criticized "coupon" or voucher settlements. See, e.g., In re General Motors Pick-up Truck Fuel Tank Prod.

Liability Litig., 55 F.3d. 768, 785 (3d Cir. 1995). However, the relief here appears well suited to the FACTA violations alleged, especially in light of the lack of actual damages. The proposed relief guarantees that defendants will distribute 4,773 vouchers. Therefore, the court will preliminarily approve the settlement.[2]

### D. The Proposed Notice

The parties propose publication notice to inform the class members of the certification of the class and preliminary approval of the proposed settlement. The parties argue that direct mail notice is untenable for two reasons. First, they argue it would be extremely difficult to obtain mailing address for the thousands of putative class members implicated by the settlement. There is no single repository of the names and addresses of each potential class member. Instead, the names and addresses are in the custody of individual banks that issue the credit and debit cards to potential class members. This information would be extremely difficult to obtain, and would likely require a court order. The parties also submit that the cost of a direct mail notice would be prohibitive.

In lieu of direct mail, the parties propose two

---

[2] The court notes that the proposed attorneys' fees of $105,000, while high, are not unduly disproportionate to the proposed remedy. Defendants have agreed to provide 4,773 vouchers worth up to $55, for a total expense of $262,515.

13

solutions. One is a single publication in the Pittsburgh Post-Gazette. The second is a flyer hanging in a prominent location at the Pirates Outfitter store at PNC Park for 120 days. The flyer will inform the parties about the settlement and direct them to a website where they may find more information.[3]

Rule 23(e)(1)(B) provides that this court "must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal or compromise." Notice of provisional certification of a class action and preliminary approval of a settlement may be combined but must satisfy Rule 23(c)(2). Fry v. Hayt, Hayt & Landau, 198 F.R.D. 461, 474 (E.D. Pa. 2000). Rule 23(c)(2) requires that, in a class certified pursuant to Rule 23(b)(3), "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," must be provided. Fed. R. Civ. P. 23(c)(2). The notice must inform the class members of the pendency of the action, their right to opt-out, the effect of their failure to do so and their right to appear through counsel. Id.

After reviewing the parties' submissions, the court finds that the proposed notice substantially complies with Rule 23(c)(2) and Rule 23(e). All of the transactions took place at

---

[3] The proposed notice in the Post-Gazette is attached to the parties joint motion at exhibit B1 and the proposed notice to hang in the Pirates Outfitter store is B2.

one location in the city - PNC Park. As a result, publication in the city's predominate newspaper, the Post-Gazette, is an appropriate means of notifying the potential class members of this action. Furthermore, the court finds that placement of a notification, with a link to a class action webpage, in conspicuous location at the store where the electronic transactions occurred is an effective means of notifying potential class members of this settlement. The court notes that the offending transactions occurred during the first month of the baseball season. As a result, the 120 day duration of the sign notification, provided that it overlaps with PNC Park and the Pirates Outfitter store being open to the public, should be a sufficient amount of time to notify the public.

E.   Appointment of Class Counsel

Pursuant to Rule 23(g)(1)(B), "a court that certifies a class must appoint class counsel." In appointing class counsel, the court must consider: (1) the work counsel has done in identifying or investigating the potential claims; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1).

The court finds that Carlson Lynch LTD, R. Bruce Carlson and Gary F. Lynch are qualified to "fairly and adequately

represent the interests of the class" as required by Rule 23(g)(1). The biographies counsel have submitted detailing their experience handling consumer class actions are sufficient. Accordingly, the court will appoint Carlson Lynch LTD, R. Bruce Carlson and Gary F. Lynch class counsel.

## IV. Conclusion

For the reasons set forth above, the Joint Motion for Preliminary Approval of Class Action Settlement will be granted.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFF HANLON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ARAMARK SPORTS, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 09-465<br>)<br>)<br>)<br>) |

ORDER

Therefore, this 3rd day of February, 2010, IT IS HEREBY ORDERED that the Joint Motion for Preliminary Approval of Class Action Settlement [Doc. No. 21] is GRANTED as follows:

All terms contained herein shall have the same meanings as set forth in the class action settlement agreement executed by the parties [Doc. No. 21 Exhibit 1].

1. Class Certification: Civil Action No. 09-0465, styled Jeff Hanlon v. Aramark Sports, LLC, shall be maintained, for settlement purposes, as a class action on behalf of the following class of plaintiffs:

    > All persons who received electronically printed receipts from any store at PNC Park in Pittsburgh, Pennsylvania at the point of sale or transaction, in a transaction occurring between March 24, 2009 and April 23, 2009, and wherein the receipt displayed (1) more than the last five digits of the person's credit card or debit card number, and/or (2) the expiration date of the person's credit card number.

With respect to the following cause of action:

> Any claims for damages or injunctive relief alleging the truncation requirements of the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681 et seq., ("FACTA") were violated at certain specified locations at PNC Park between March 24, 2009 and April 23, 2009.

2. Class Representative and Class Counsel: Jeff Hanlon is designated as class representative and Carlson Lynch LTD, R. Bruce Carlson and Gary Lynch are designed as Class Counsel.

3. The certification of this class is conditioned on the final approval of the settlement and, in the event the settlement is not approved, the certification shall be vacated.

4. Exclusion: The notice to class members must inform them as to how they may exclude themselves from the class.

5. Proposed settlement: The proposed settlement between the plaintiff class and defendant appears, upon preliminary review, to be within the range of reasonableness and accordingly shall be submitted to the class members for their consideration and for hearing under Federal Rule of Civil Procedure 23(e). The terms of the settlement are as follows:

> Defendant will offer participating class members who submit proof of a credit or debit card purchase during the class period a Settlement Relief Voucher ("voucher") good for any one of the following: (1) $50 off a purchase of an item with a price of $100 or more; (2) a "classy" tee shirt with a suggested retail value of $20-40; (3) a "hoodie" with a suggested retail value of $50-55 redeemable at any store in PNC Park. Defendant will further provide a voucher to every customer at PNC Park who makes a purchase with a credit card beginning on the

>     date fifteen days after the In-Store notice is removed and until all 4,773 vouchers have been distributed. Defendant will pay class counsel a single payment of $105,000 for attorneys fees and allowable litigation costs and expenses. Defendant will also pay Jeff Hanlon $1,500 for his service as class representative.

6. Notice: The court finds that the notice proposed by the parties is the best practicable under the circumstances. The parties will publish in the Post-Gazette and post the notice in the Pirate Outfitters store within ten (10) business days of this order as consistent with the terms of the settlement agreement. The in-store notice shall remain in place for 120 days.

7. Hearing: A hearing will be held before this court on Friday, April 5, 2010, at 10:00 a.m. in Courtroom 3A, 3rd Floor, United States Courthouse, Pittsburgh, Pennsylvania, to consider whether the settlement should be given final approval by the court:

>     (A) Written objections by class members to the proposed settlement will be considered if received by the court and class counsel on or before April 1, 2010;
>
>     (B) Any class member who wishes to opt-out of the proposed settlement must file a notice with both the court and class counsel on or before April 1, 2010;
>
>     (C) At the settlement hearing, class members

> may be heard orally in support of, or if any have timely submitted written objections, in opposition to the settlement;
>
> (D) Class counsel and counsel for defendants should be prepared at the hearing to respond to objections filed by class members and to provide other information as appropriate, bearing on whether or not the settlement should be approved.

8. In the event the Effective Date occurs, all class members will be deemed to have forever released and discharged the Released Claims. In the event that the Effective Date does not occur for any reason whatsoever, the settlement agreement shall be deemed null and void and shall have no effect whatsoever.

BY THE COURT:

_____, C. J.

cc: All Counsel of Record